# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:15-cv-161-GCM
# (3:12-cr-116-GCM-1)

| | | |
|---|---|---|
| **RANDY ALAN CARPENTER,** | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255, (Doc. No. 1), and on the Government's Response in Opposition to Petitioner's Motion to Vacate, (Doc. No. 7).

**I. BACKGROUND**

From December 2001 through May 2007, Peerless Real Estate Services and related entities defrauded federally insured banks and individual investors in Mecklenburg, Buncombe, and Mitchell Counties in connection with a proposed real estate development known as the "Village of Penland." (Criminal Case No. 3:12-cr-116-GCM-1, Doc. No. 11: Superseding Indictment). Using Penland lots as collateral, the conspirators obtained over $82 million in residential mortgage loan proceeds, a significant portion of which they diverted to their personal use and other investments. (Id.). Petitioner Randy Alan Carpenter, who was licensed in North Carolina as an attorney, land surveyor, and civil engineer, closed over 300 residential real estate loans related to the Penland project. (Id.). He failed to report all of the income that he received from

1

these closings, as well as other compensation he received from Peerless. (Id., Doc. No. 43 at ¶¶ 7-8, 14-15: Factual Basis). Petitioner was charged in a Superseding Indictment with one count of conspiracy to commit offenses against the United States, including mail, wire, and bank fraud, as well as making a false statement and application in relation to a loan, in violation of 18 U.S.C. § 371 (Count One); six counts of bank fraud in violation of 18 U.S.C. §§ 2, 1344, 1346 (Counts Two through Five, Eight, and Nine); and two counts of making a false statement on a tax return for failing to report all income earned from Penland related and other services in violation of 26 U.S.C. § 7206(1) (Counts Six and Seven). (Id., Doc. No. 11).

After the Government had prepared for trial, Petitioner agreed to plead guilty to Counts Six and Seven, making a false statement on a tax return in 2005 and 2006. (Id., Doc. No. 44: Plea Agreement). He agreed that he knowingly underreported the amount of gross receipts from his businesses on Line 1 of Schedule C in each of those years (he listed $360,240 for 2005 and $512,250 for 2006). (Id., Doc. No. 43: Factual Basis). He admitted that he had not reported income from real estate closings and other compensation and benefits that he had received from Peerless, such as loan payments made on his behalf, for which he should have paid additional tax. (Id.). He agreed that the amount of tax loss known or reasonably foreseeable to him was less than $1 million. (Id., Doc. No. 44 at ¶ 7(a): Plea Agreement).

Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), the parties agreed that the appropriate term of imprisonment was between 24 and 30 months. (Id. at ¶ 7(c)). The Government agreed to recommend a two-level reduction for acceptance of responsibility and to dismiss the remaining charges. (Id. at ¶¶ 2; 7(b)). Additionally, Petitioner agreed to pay full restitution, regardless of the loss amount, to all victims directly or indirectly harmed by his

relevant conduct. (Id. at ¶ 8(a)). He agreed that the IRS was a victim, that restitution would be included in the judgment, and that an unanticipated amount of restitution was not a ground for withdrawing his plea. (Id.). Petitioner also consented to file accurate and complete tax returns for 2005 and 2006 within six months of his guilty plea, unless excused by the Court for good cause. (Id. at ¶ 21(d)). Finally, Petitioner waived his right to challenge his conviction or sentence on direct appeal or in any postconviction proceeding, except as to claims of ineffective assistance of counsel or prosecutorial misconduct. (Id. at ¶¶ 16-17).

During the plea hearing, Petitioner testified that no one had intimidated, threatened, or made a promise of a light sentence or leniency to get him to plead guilty; that he had time to "fully discuss" his case with his attorney and was satisfied with his attorney's services; and that he understood that he was waiving his right to appeal. (Id., Doc. No. 51: Plea Tr.). This Court advised him that the probation office would prepare a presentence report (PSR), that he was entitled to have his attorney present during the interview, and that he and his attorney would "have an opportunity to respond and object to any portion of the presentence report with which you disagree." (Id. at 9).

The Probation Officer calculated Petitioner's base offense level as 20 (based on a tax loss of $507,995). (Id., Doc. No. 52 at ¶ 31: PSR). Allowing a two-level increase for the failure to report income in excess of $10,000 that was the result of illegal criminal activity, as well as a two-level decrease for acceptance of responsibility, Petitioner's total offense level was 20. (Id. at ¶¶ 32; 38-39). Petitioner's criminal history category was I, and the advisory guidelines range was 33-41 months of imprisonment. (Id. at ¶ 62). However, the plea agreement significantly reduced Petitioner's range of imprisonment by limiting his sentence to 24-30 months of

imprisonment and by dismissing the other charges. (Id. at ¶ 63). Petitioner's adjusted gross income for 2005 was determined to be $323,329, or $200,446 more than the amount listed on his return, resulting in $86,045 in taxes due. (Id. at ¶ 23; see also Doc. No. 7-1: Tax Loss Summary (Gov. Ex. 1)). For 2006, Petitioner's adjusted gross income for 2006 was $1,193,069, or $1,069,550 more than the amount listed on his return, resulting in $415,950 in taxes due. (Criminal Case No. 3:12-cr-116-GCM-1, Doc. No. 52 at ¶ 23; see also Doc. No. 7-1). The total amount of unpaid federal taxes was $507,995, not including interest and penalties. (Criminal Case No. 3:12-cr-116-GCM-1, Doc. No. 52 at ¶¶ 23; 25). At sentencing, this Court noted that no objections had been filed to the PSR. (Doc. No. 7-2 at 2: Sent. Tr. (Gov. Ex. 2)). The Court then asked: "Have you reviewed the presentence report, Mr. Carpenter?" (Id. at 3).

DEFENDANT CARPENTER: Yes, Your Honor, I did.

THE COURT: Are you satisfied you understand what's in it?

DEFENDANT CARPENTER: Yes.

THE COURT: Mr. Tate, are you satisfied your client's reviewed the presentence report and understands what's in it?

MR. TATE: Yes.

(Id. at 3). When given the opportunity to address the Court, defense counsel requested a 24-month sentence, and Petitioner apologized for his conduct. (Id. at 3-5). The Government submitted an exhibit that included a summary of the tax loss and computations and a compact disc with the underlying data, which had previously been provided to the Court and to defense counsel, to support the tax loss computation. (Id. at 8). The Court admitted the exhibit without objection. (Id.). The Court stated that the calculation "looks appropriate" and was "consistent

with the plea agreement" and what everyone had agreed to. (Id.). The Court also adopted the findings in the PSR. (Criminal Case No. 3:12-cr-116-GCM-1, Doc. No. 59: Statement of Reasons). In imposing Petitioner's sentence, the Court stated:

> Considering the 3553 factors, the nature and circumstances of the offense, the history and characteristics of the defendant, much of what the Government says is absolutely true, that Mr. Carpenter well knew that was he was doing was not some negligence, but willful.
> The sentencing range has been agreed to by everybody . . . to reflect the seriousness of the offense, to provide just punishment, adequate deterrence to criminal conduct is certainly a factor.
> . . . And there's no need to protect the public from further crimes of this defendant. There's no other defendants for sentencing disparities. The restitution is an issue. And he will be required to pay restitution to the United States for the taxes.
> So considering all those factors, I find that a sentence of 27 months, which is halfway between the low and the upper end is appropriate for all of those reasons.

(Doc. No. 7-2 at 9). The Court ordered Petitioner to pay $507,995 in restitution to the Internal Revenue Service. (Id. at 11). Judgment was entered on April 17, 2014, and Petitioner did not appeal. (Criminal Case No. 3:12-cr-116-GCM-1, Doc. No. 58: Judgment). Instead, Petitioner timely filed this § 2255 motion on April 10, 2015. In his motion to vacate, Petitioner seeks to have his restitution reduced to $500 or less and to have his sentence reduced to 24 months and one day. (Id.). Despite having received a sentence and an order of restitution within the range agreed to as part of his plea agreement, Petitioner raises six claims of ineffective assistance of trial counsel, all of which relate to this Court's restitution order. In particular, he argues that his attorney: (1) failed to hire a forensic accountant; (2) failed to investigate his tax loss; (3) failed to review and discuss the PSR with him; (4) failed to object to the PSR; (5) misrepresented the PSR's findings; and (6) failed to subject the prosecution's case to meaningful testing. (Doc. No. 1 at 2-17). He also attempts to directly challenge this Court's restitution order. (Id. at 17-20).

5

## II. STANDARD OF REVIEW

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter and the Government's Response, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III. DISCUSSION

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. CONST. amend. VI. To show ineffective assistance of counsel, a petitioner must first establish a deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In making this determination, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010). Furthermore, in considering the prejudice prong of the analysis, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance

prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

To establish prejudice in the context of a guilty plea, a petitioner must show that "'there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial.'" Meyer v. Branker, 506 F.3d 358, 369 (4th Cir. 2007) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)). The petitioner's "subjective preferences" are not dispositive, but rather the test is "whether proceeding to trial would have been objectively reasonable in light of all of the facts." United States v. Fugit, 703 F.3d 248, 260 (4th Cir. 2012), cert. denied, 134 S. Ct. 999 (2014). In evaluating claims under § 2255, statements made by a defendant under oath at a plea hearing carry a "strong presumption of verity" and present a "formidable barrier" to subsequent collateral attacks. Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). As the Fourth Circuit has made clear, "courts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy," and § 2255 claims that contradict a petitioner's plea colloquy are deemed "patently frivolous or false," except in extraordinary circumstances. United States v. Lemaster, 403 F.3d 216, 221-22 (4th Cir. 2005). Extraordinary circumstances include being unrepresented and severely ill at the time of the plea, or receiving admittedly ineffective assistance that renders a plea involuntary, where the written plea agreement and plea colloquy do not contradict counsel's inaccurate advice. Id.; United States v. White, 366 F.3d 291, 297-300 (4th Cir. 2004).

Here, each of Petitioner's ineffective assistance of counsel claims is related to his contention that the restitution amount was too high and should be reduced. First, Petitioner's challenge to the amount of restitution is not cognizable in a § 2255 proceeding because it does

not affect his custody. Section 2255 provides that:

> A prisoner in custody under sentence of a court . . . claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or law of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). "A reduction in restitution is not a release from custody." Blaik v. United States, 161 F.3d 1341, 1342 (11th Cir. 1998) (collecting cases). "[I]t is well-settled that § 2255 relief may not be granted when the defendant challenges only a fine or restitution order." United States v. Coward, 230 F.3d 1354 (4th Cir. 2000) (unpublished table decision); see also United States v. Hudgins, 201 F. App'x 142, 143 (4th Cir. 2006) (stating that "a § 2255 motion may not be used for the sole purpose of challenging fines or restitution orders"); Underwood v. United States, Civil No. 3:10cv784, 2012 WL 6082916, at *6 (E.D. Va. Dec. 6, 2012) ("A majority of circuit courts hold restitution claims are not cognizable on collateral review under § 2255 because restitution orders do not meet the provision's 'in custody' requirement.") (collecting cases); but cf. United States v. Luessenhop, 143 F. App'x 528, 531 (4th Cir. 2005) (allowing, without discussion of propriety of proceeding under § 2255, an ineffective assistance of counsel claim where defendant made showing that the amount of loss and amount of restitution would have been substantially less). The fact that Petitioner is alleging ineffective assistance with respect to restitution does not change this result, because he is still seeking to challenge a non-custodial restitution order. See Kaminski v. United States, 339 F.3d 84, 85 n.1 (2d Cir. 2003) (recognizing that, even if defendant could show ineffective assistance with respect to restitution, the district court lacked subject matter jurisdiction to grant relief under § 2255). Therefore, Petitioner's assertions that his counsel provided ineffective assistance with respect to the order of

8

restitution are not cognizable under § 2255.

The Court further finds that, even if Petitioner may proceed under § 2255 with regard to his restitution claim, his ineffective assistance of counsel claims fail because he is unable to show prejudice. Petitioner first argues that his attorney provided ineffective assistance by promising to hire a forensic accountant to review Petitioner's records, to prepare tax schedules on his behalf for filing, and, if necessary, to testify on his behalf. (Doc. No. 1 at 4). He asserts that this promise was material to his decision to plead guilty. (Id.). He contends that counsel also failed to investigate the tax loss and that counsel's failure to test the prosecution's figures, despite knowing that Petitioner had different figures, amounted to the constructive denial of counsel. (Id. at 6-9; 15-17). Petitioner asserts this increased the amount of restitution that he was ordered to pay. (Id. at 5). He also contends that because restitution remained an issue, this Court sentenced him to three more months of incarceration than the lowest end of the plea agreement. (Id.). Petitioner speculates that if counsel had presented deductible expenses for Petitioner's "reimbursable expenses," the restitution owed could reasonably have been $500 or less, and he would have received a shorter sentence. (Id. at 9). Petitioner contends that his monthly billing invoices show gross receipts of $360,240 for 2005 and $512,250 for 2006 (the same amounts he listed on his tax returns). (Id. at 7). He contends that his 2005 business records show that Peerless paid him $410,000 and that $48,375 in reimbursable charges were given to Peerless. (Doc. No. 1-2 at 2). He also asserts that his 2006 business records show that Peerless paid him $1,410,326.91 and that $940,207.76 in reimbursable charges were given to Peerless. (Id.). Petitioner asserts that the Government's records were inaccurate because they relied on the HUD settlement statements, rather than checks received and deposited; they included closing

9

attorney fees, even though no attorney fees were paid; and they included $55,000, instead of $10,000, for the Bonner closing on July 10, 2006. (Id. at 4; Doc. No. 1 at 7). He also contends that some of the payments on which the Government relied were not received and deposited until the next calendar year. (Doc. No. 1 at 7). Petitioner speculates that more inaccuracies would likely have been found, that there was deposition testimony as to the inaccuracy of the settlement statements, and that land transfers, credit card statements, and other receipts would have helped verify the "reimbursable charges." (Id. at 7-8).

Even assuming arguendo that Petitioner could show deficient performance by counsel, he cannot show that he was prejudiced because the evidence supports this Court's finding of the amount of loss and restitution owed, and Petitioner's assertions to the contrary are speculative and unsupported. Petitioner asserts that counsel's agreement to provide a forensic accountant to determine his tax liability was "material" to his decision to plead guilty. (Doc. No. 1 at 4). He does not, however, specifically allege that but for this representation, he would not have pleaded guilty, and he does not seek to set aside his guilty plea. Accordingly, he has not shown prejudice based on counsel's alleged ineffective representation. See Meyer, 506 F.3d at 369.

Petitioner also cannot show that his restitution would have been lower had his counsel investigated the tax loss. As the tax loss summary excerpts show, the loss amounts are based on Petitioner's own records; they are based on checks dated within the relevant tax years;[1] attorney

---

[1] The Government notes in its brief that because Petitioner stated in his tax return that he was using the cash method of accounting, he was required to report amounts actually or constructively received during the tax year (i.e., not when a check was deposited). See

fees were paid to Petitioner as shown on certain checks and settlement statements; and the amount paid to Petitioner for the Bonner closing on July 10, 2006, was correctly listed as $10,000. See (Doc. No. 7-1 at 11). Thus, Petitioner's assertion that the records used to support the amount of restitution were inaccurate is unsupported. Rather, these records show the individual transactions and that the settlement payments to Petitioner in 2005 totaled $452,475 and in 2006 these payments totaled $1,489,525. (Id. at 3-14).

Petitioner even admits that the amount that Peerless paid him in 2006 exceeded $1.4 million, but he only reported $512,250 as gross receipts on his tax return, and that Peerless paid him $410,000 in 2005, but he only reported $360,240 as gross receipts. (Doc. No. 1-2 at 2). To the extent that he relies on "reimbursable expenses" to support a lower figure, he provides no evidence to support the amount of such expenses or to show that they would qualify to reduce his gross receipts or the taxes due under the Internal Revenue Code. Nor does he provide any details regarding how his own records of the settlement statements were allegedly inaccurate. Because Petitioner's contention that the amount of restitution should have been lower is unsupported, he cannot show prejudice. See United States v. Dyess, 730 F.3d 354, 359-60 (4th Cir. 2013) (holding it was proper to dismiss § 2255 claims based on vague and conclusory allegations), cert. denied, 135 S. Ct. 47 (2014). Therefore, his claims of ineffective assistance based on the amount

---

http://www.irs.gov/publications/p334/ch02.html#en_US_2014_publink1000313238. The Government further contends that these checks were drawn on Petitioner's own trust account and were signed by him, so any contention that they were not constructively received by the date of the check is disingenuous.

of restitution are without merit.

Petitioner next contends that his sentence was increased by three months because restitution was an issue. See (Doc. No. 1 at 5). This contention is also without merit. The plea agreement included a sentencing range between 24 and 30 months. (Criminal Case No. 3:12-cr-116-GCM-1, Doc. No. 44 at ¶ 7(c)). This Court was not required to sentence Petitioner at the bottom of the range. Rather, as the sentencing transcript and statement of reasons show, this Court considered all of the sentencing factors in Section 3553(a) and determined an appropriate sentence to impose within this range. See (Doc. No. 7-2 at 9-10: Sent. Tr.). This Court's statement that restitution was an issue appropriately recognized that restitution is a sentencing factor under § 3553(a)(7). Additionally, Petitioner was bound by his plea agreement to pay restitution. (Criminal Case No. 3:12-cr-116-GCM-1, Doc. No. 44 at ¶ 8(a)). There is simply no indication in the record that this Court imposed a 27-month sentence based on the amount of restitution due or the fact that Petitioner had not yet filed his amended tax returns. See (Doc. No. 7-2 at 9: Sent. Tr.). Therefore, Petitioner cannot show prejudice based on his allegations of ineffective assistance of counsel with respect to his sentence, because he cannot show there is a reasonable probability that, but for his counsel's actions, he would have received a shorter sentence. See Strickland, 466 U.S. at 694; Sexton, 163 F.3d at 882.

Petitioner next contends that he did not receive the PSR until an hour before sentencing, that he only had 15-20 minutes to read it, and that counsel did not explain the importance of the document or discuss it with him. See (Doc. No. 1 at 10; Doc. No. 1-3: Statement of Glaucia Carpenter). He contends that this Court did not ask him at sentencing whether he had reviewed and discussed the PSR with his counsel. (Doc. No. 1 at 11). Petitioner argues that his counsel

should have objected to the PSR because he told counsel previously that he did not agree with the numbers in an earlier financial report (the "Tablinsky Report") and, after reading the PSR, he told counsel that he did not agree with the gross income amounts listed under "Offense Conduct." (Id. at 11-12; 14). Petitioner asserts that counsel told him that the numbers in the PSR would not make a difference because Petitioner had already agreed to a 24-30 month sentence. (Id. at 14-15). He contends that he was prejudiced by these errors because he otherwise would have objected to the gross income amounts and the order of restitution and term of incarceration would have been lower. (Id. at 11; 15). This contention is without merit. Petitioner is an attorney; he agreed, as part of his plea agreement, to pay full restitution regardless of the amount of loss; he was informed that a PSR would be prepared and that he could object to it; he admits that he received this report; and the PSR included the amount of restitution that Petitioner owed. Petitioner asserts that he consistently questioned the amount that he owed, yet despite his opportunity to address this Court during sentencing, he never mentioned this issue. See (Id., Doc. No. 7-2 at 4-5: Sent. Tr.).

As shown above, the amount of loss and the restitution ordered were the same, these amounts were properly found by this Court, and these amounts were supported by the evidence the Government submitted at sentencing. (Id. at 11; see also Criminal Case No. 3:12-cr-116, Doc. No. 52 at ¶¶ 23; 25; 74: PSR; Doc. No. 59: Statement of Reasons). Petitioner relies only on speculation and unsupported contentions that someone should have been able to go over Petitioner's own records to justify the amounts that he put on his self-prepared tax returns to within $500. This is insufficient to show that any failure to object to the PSR constituted deficient performance. See Strickland, 466 U.S. at 687-88. Furthermore, Petitioner cannot show

prejudice from counsel's actions with respect to the PSR, because he has not shown a reasonable probability that but for counsel's conduct the result of the proceeding would have been different and that the result of the proceeding was fundamentally unfair or unreliable. There is simply no evidence that any additional discussion of the PSR or objections to it would have changed the amount of restitution Petitioner was required to pay, or would have changed his sentence. Because the evidence establishes that this Court correctly determined the amount of restitution owed by Petitioner and based his sentence on the relevant considerations under § 3553(a), Petitioner's allegations of ineffective assistance are denied, as his claim of prejudice is based on unsupported speculation.

Petitioner next asserts that this Court erred in determining the amount of restitution before determining his tax liability and, as a result, he has to pay taxes on non-income and without being allowed to present his position on tax liability. (Doc. No. 1 at 17-20). He characterizes this as a miscarriage of justice. (Id. at 17). Because Petitioner is not alleging ineffective assistance or prosecutorial misconduct with respect to this issue, it is barred by his plea waiver, which was made knowingly and voluntarily. See United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005). Additionally, as this Court has already discussed, because this claim also seeks to challenge the amount of restitution, rather than seeking release from custody, Petitioner cannot obtain relief under § 2255 on this basis. See Coward, 230 F.3d at 1354. This issue also is procedurally barred because Petitioner did not raise it on direct appeal, and he has not asserted cause and actual prejudice for failing to appeal this issue. See United States v. Pettiford, 612 F.3d 270, 279 (4th Cir. 2010). Finally, because this Court's order of restitution was based on the amount of loss and was properly supported, Petitioner's speculation that it

14

should be lower is insufficient to entitle him to relief. See Dyess, 730 F.3d at 359-60.

## IV. CONCLUSION

For the reasons stated herein, Petitioner's § 2255 motion to vacate is denied.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's § 2255 motion to vacate, (Doc. No. 1), is **DENIED** and **DISMISSED**.

2. Pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, this Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Miller–El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong).

Signed: September 8, 2015

Graham C. Mullen
United States District Judge